UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUADALUPE ARREOLA,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>　　　　　　　　　　Defendant. | Case No.: 18cv0242-LAB-MDD<br><br>**REPORT AND RECOMMENDATION ON MOTION AND CROSS MOTION FOR SUMMARY JUDGMENT**<br>**[ECF NOS. 12, 13]** |

Plaintiff Guadalupe Arreola ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final administrative decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for Disability Insurance Benefits under Title II of the Social Security Act ("Act"). (AR 18). [1]

For the reasons expressed herein, the Court recommends that Defendant's motion for summary judgment be GRANTED and Plaintiff's motion for summary judgment be DENIED.

---

[1] "AR" refers to the Certified Administrative Record filed on May 29, 2018.

1

# I. BACKGROUND

Plaintiff was born December 30, 1956. (AR 469). At the time the instant application was filed on April 13, 2012, Plaintiff was 55-years-old which categorized her as a person of advanced age. 20 C.F.R. § 404.1563, 416.963.

## A. Procedural History

On April 13, 2012, Plaintiff protectively filed an application for a period of disability insurance benefits under Title II of the Social Security Act, alleging a disability beginning February 26, 2010. (ECF No. 12-1, p. 1). After her application was denied initially and upon reconsideration, Plaintiff requested an administrative hearing before an administrative law judge ("ALJ"). (AR 113). An administrative hearing was held on April 2, 2014. Plaintiff appeared and was represented by attorney Randilyn Nordstrom. Testimony was taken from Plaintiff and Alan E. Cummings a vocational expert. (*Id.*). On April 24, 1014, the ALJ issued a decision denying Plaintiff's claim for benefits. (AR 124).

On June 16, 2014, Plaintiff sought review with the Appeals Counsel. (AR 199). On March 24, 2015, the Appeals Council granted review and remanded the claim for further administrative proceedings. (AR 129-133).

A supplemental hearing was held on April 24, 2017. (AR 40-61). Plaintiff appeared with counsel and testified at the hearing. Dr. Richard Anderson, Ph.D., a medical expert, also appeared and testified. (*Id.*). The ALJ denied Plaintiff's claim in a written decision on June 29, 2017. (AR 15-33). This timely civil action followed.

# II. DISCUSSION

## A. Legal Standard

Sections 405(g) and 1383(c)(3) of the Social Security Act allow

unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner. 42 U.S.C. §§ 405(g), 1383(c)(3). The scope of judicial review is limited in that a denial of benefits will not be disturbed if it is supported by substantial evidence and contains no legal error. *Id.*; *see also Batson v. Comm'r Soc. Sec. Admin*, 359 F.3d 1190, 1993 (9th Cir. 2004).

Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Sandqathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997). "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)). The court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusions. *Desrosiers v. Sec'y of Health & Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). If the evidence supports more than one rational interpretation, the court must uphold the ALJ's decision. *Batson*, 359 F.3d at 1193. When the evidence is inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

Even if a reviewing court finds that substantial evidence supports the ALJ's conclusions, the court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her decision. *Batson*, 359 F.3d at 1193. Section 405(g) permits a court to enter a judgment affirming, modifying or reversing the Commissioner's decision. 42 U.S.C. § 405(g). The reviewing court may also remand the matter to the Social Security Administration for further proceedings. *Id.*

**B.     Summary of the ALJ's Findings**

In rendering his decision, the ALJ followed the Commissioner's five step sequential evaluation process. *See* C.F.R. § 404.1520. At step one, the ALJ

found that Plaintiff had not engaged in substantial gainful activity since February 26, 2010. (AR at 18).

At step two, the ALJ found that Plaintiff had the following severe impairments: obesity, osteoarthritis in the knees bilaterally, possible bipolar disorder with psychotic features versus shorter episode of psychotic disorder--not otherwise specified, intellectual disability, mood disorder—not otherwise specified. (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in the Commissioner's Listing of Impairments. (*Id.*). (citing 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

Next, after considering the entire record, the ALJ determined that Plaintiff had the "residual functional capacity [(RFC)] to perform medium work as defined in 20 C.F.R. 404.1567(c)." (AR 21). The Plaintiff "would also be restricted to simple and routine tasks, in a non-public setting." (*Id.*). The ALJ said that his RFC assessment was based on all the evidence with consideration of the limitations and restrictions imposed by the combined effects of all the Plaintiff's medically determined impairments. (*Id.*). The ALJ also stated that he considered the opinion evidence in accordance with the requirements of 20 C.F.R. 404.1527. (*Id.*).

The ALJ then proceeded to step four of the sequential evaluation process. He found Plaintiff was unable to perform her past relevant work. (AR 31). For the purposes of his step five determination, the ALJ accepted the testimony of vocational expert ("VE") Nelly Katsell. The VE determined that Plaintiff could perform jobs identified by the VE that exist in significant numbers in the national economy. Such as cleaner (DOT Code 381.687-0189);

assembler (DOT 709.684-014); or packager (DOT 920.587-018). (AR 32).

**C. Issue in Dispute**

The sole issue in dispute in this case is whether, in determining Plaintiff's RFC, the ALJ properly rejected the opinion of Plaintiff's treating physician, Dr. Kaiser M.D. Specifically, Plaintiff contends "the ALJ did not articulate legally sufficient reasons for rejecting Dr. Kaiser's opinion that [Plaintiff] would have a moderate impairment in the ability to maintain attendance, work at a consistent pace, sustain an ordinary routine, and respond to changes in a work setting." (ECF 12-1 at p.9).

Defendant argues that "the ALJ considered the moderate mental limitations that Dr. Kaiser endorsed and reasonably translated those limitations into concrete restrictions in Plaintiff's RFC, limiting her to simple, routine tasks in a non-public setting." (ECF No. 13 at p. 15).

**D. Analysis**

**1. The Treating Physician Rule**

The law is well established in this circuit that a treating physician's opinions are entitled to special weight because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. *See McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). "The treating physician's opinion is not however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). If the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996);

*Baxter v. Sullivan*, 923 F.3d 1391, 1396 (9th Cir. 1991).

To reject the opinion of a treating physician which conflicts with that of an examining physician, the ALJ must " 'make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.' " *Winans v. Bowen,* 853 F.2d 643, 647 (9th Cir.1987) *quoting Sprague v. Bowen,* 812 F.2d 1226, 1230 (9th Cir. 1987); *see also Murray v. Heckler,* 722 F.2d 499, 502 (9th Cir.1983) (adopting this rule). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen,* 799 F.2d 1403, 1408 (9th Cir. 1986). The rule established by *Murray* does not apply, however, "when the nontreating physician relies on independent clinical findings that differ from the findings of the treating physician." *Miller v. Heckler,* 770 F.2d 845, 849 (9th Cir.1985); *Allen,* 749 F.2d at 579. " '[T]o the extent that [the nontreating physician's] opinion rests on objective clinical tests, it must be viewed as substantial evidence....' " *Miller,* 770 F.2d at 849 (brackets in original), *quoting Allen v. Heckler,* 749 F.2d 577, 579 (9th Cir.1984). Where medical reports are inconclusive, " 'questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary.' " *Sample v. Schweiker,* 694 F.2d 639, 642 (9th Cir.1982) *quoting Waters v. Gardner,* 452 F.2d 855, 858 n. 7 (9th Cir.1971).

### 2. Summary of Dr. Kaiser's Medical Evidence

In assessing Plaintiff's RFC, the ALJ considered Dr. Kaiser's Medical Source Statement written in August 2015. (AR 787-793). Specifically, Dr. Kaiser found Plaintiff had mild intellectual disability, resulting in a somewhat simplistic thinking and a concrete thought process. Dr. Kaiser's Medical Source Statement assessed Plaintiff's restrictions on mental work

related abilities as follows:

> MODERATE RESTRICTION: Maintain attendance and punctuality during a workday and workweek; Perform at a consistent pace without more than regular breaks in a workday; Sustain an ordinary routine without special supervision; Respond appropriately to changes in routine work setting.
> SLIGHT RESTRICTION: Interact appropriately with the public; Interact appropriately with supervisor(s); Interact appropriately with co-workers. (*Id.*)

Dr. Kaiser also opined that Plaintiff would likely be able to "handle work stressors" when she is not in a manic phase. (AR 788). "[B]ut patients with bipolar I generally fluctuate between depression and mania, both of which would cause her problems functioning at work." (*Id.*).

### 3. The ALJ's Reasons for Discounting Dr. Kaiser's Opinion

After detailing Dr. Kaiser's opinions the ALJ noted during a medical appointment on November 30, 2015, Dr. Kaiser reported Plaintiff's mood was better, her affect was euthymic, calm, not labile. (AR 797). Her thought process is more organized and she reported she is feeling good. (*Id.*). Similarly, the ALJ noted that Dr. Kaiser's progress notes indicated "Plaintiff was doing much better, and she had been able to go to sleep and she had not been feeling like laying around all day since she had more energy." (AR 796). Dr. Kaiser's prognosis on August 11, 2015, opined that her depression will likely improve but she is prone to depression or mania for the rest of her life. (AR 793). Based on this evaluation of Dr. Kaiser's assessment and his longitudinal history with Plaintiff the ALJ gave Dr. Kaiser's opinion "some weight."

Including Dr. Kaiser, the record in this case includes treatment, examinations, and reports related to Plaintiff's mental health status beginning in 2010 until 2017 from different medical providers. In his

7

decision, the ALJ cited to opinions from one internist, three psychologists/ psychiatrists that either examined and/or treated Plaintiff. The testimony from the medical expert appearing at the hearing was also cited in the ALJ's opinion. The ALJ considered these medical opinions and, based upon his substantive analysis, accorded each opinion with either significant weight, great weight, or partial weight. The Court will address each of these doctor's findings and the weight given by the ALJ to their respective opinions.

The opinion of consultative examiner Dr. Phong Dao, D.O. was given significant weight. Dr. Dao examined Plaintiff first on July 11, 2012 and again on February 8, 2017. In July 2012, Plaintiff mainly complained of bipolar disorder and and bilateral knee pain.[2] (AR 25). Plaintiff reported "that she had more depressed symptoms than manic symptoms and she was presently taking lithium for her bipolar disorder. (*Id.*). Plaintiff was diagnosed with bipolar disorder as well as mild knee problems. In February 2017, Dr. Dao again examined Plaintiff and diagnosed chronic knee pain, osteoarthritis, obesity, and history of bipolar disorder for many years. Plaintiff also related that she experienced depression symptoms more than manic symptoms. She stated she often experienced symptoms of a depressed mood and had decreased interests, decreased memory, decreased concentration and insomnia. (AR 908). She denied suicidal/homicidal thoughts. (*Id.*). Plaintiff also reported that she was doing good, had moved to a new apartment, and exercising every day. The ALJ found Dr. Dao's opinion well supported by the medical evidence.

---

[2] Although Dr. Dao was completing an internal medicine evaluation, he was in a position to observe Plaintiff's mental status at that point in time and he included those observations in his report.

On November 19, 2010 and December 16, 2010, Dr. Giovanna Zerbi, Psy.D. conducted a Neuropsychological Evaluation of Plaintiff. (AR 26). Dr. Zerbi noted Plaintiff's behavior, eye contact, and speech were normal (AR 513). Dr. Zerbi found that Plaintiff meets the criteria for mild mental retardation but noted that it has not interfered with her ability to work…" (AR 516). Dr. Zerbi opined that Plaintiff "may benefit from receiving vocational rehabilitation services to help her attain a job." (*Id.*). Dr. Zerbi also recommended "therapy to help her deal with day to day concerns…." (*Id.*). The ALJ found the opinion of Dr. Zerbi well supported by explanation and by the medical evidence. (AR 27). Accordingly, the ALJ gave partial weight to Dr. Zerbi's opinion.

Dr. C. Valette, Ph.D., a Clinical Psychologist completed a Psychological Consultative Examination of Plaintiff on March 30, 2011. (AR 431). Dr. Valette noted that Plaintiff's attitude and behavior were within normal limits. Plaintiff's thought processes were organized and her speech was generally normal. (AR 432). Dr. Valette did not observe Plaintiff to have symptoms of a mood disorder. Plaintiff was a sufficient historian and was able to focus on tasks without supervision of Dr. Valette. Plaintiff's results on the Folstein Mental Status examination were deemed invalid due to poor effort. (*Id.*). Plaintiff scores on the Bender-Gestalt II test were in the average range and deemed valid by Dr. Valette. (*Id.*). The remaining tests: Trails A and B; Wechsler Adult Intelligence Scale-IV; Wide Range Achievement Test-IV were all deemed invalid due to poor effort. (AR 433). Dr. Valette opined that Plaintiff's test results were "inconsistent with educational and work history" and "inconsistent with her ability to obtain a high school diploma and not attend special education classes through middle or high school." (*Id.*). Ultimately, Dr. Valette found Plaintiff to be malingering and that Plaintiff

had no mental restrictions. (*Id.*). Despite being unable to obtain sufficient test results to complete a Medical Source Statement, Dr. Valette did notate that during the appointment, Plaintiff indicated that she felt her mood was stable, she was exercising and going on walks. (AR 991-920). Based on the number of tests conducted and written anaylsis, the ALJ accorded Dr. Valette's opinion significant weight. (AR 28).

Dr. Jessica Durr, Ph.D., a Clinical Psychologist and a consultative examiner, completed a Psychological Consultative Examination of Plaintiff on February 21, 2017. (AR 917). Dr. Durr noted that Plaintiff was a poor historian. Dr. Durr reported that Plaintiff stated she was applying for disability "because of her legs" but she also complained of bipolar disorder. (AR 918). Dr. Durr reported that Plaintiff stated she began having difficulty in July of 2010 "but was unable to describe difficulties." (*Id.*). Also, Plaintiff first stated she was not taking medications and then indicated she was taking medications for depression, insomnia and for voices. (*Id.*). According to Dr. Durr, Plaintiff also stated she had never seen a psychiatrist but that according to Plaintiff's records she had seen one in 2011 and 2016. (*Id.*). Dr. Durr also noted that the medical records she reviewed showed that Plaintiff was hospitalized in 2014 "due to difficulties sleeping after apparent medication changes". (*Id.*). Dr. Durr noted that the hospital records "also indicated 'no history of manic or hypomanic symptoms of any kind.'" (*Id.*).

Dr. Durr assessed Plaintiff's current level of functions as independent in activities of daily living, she manages her own money, and her typical day included watching television, cooking, cleaning house and going for walks. (AR 919). Dr. Durr reported that Plaintiff understood the questions asked but was a poor historian and seemed to give less than optimal effort. (AR 920). In intellectual functioning, Dr. Durr noted that Plaintiff was testing in

10

the "extremely low range" which seemed "inconsistent with Plaintiff's reported educational and vocational history." (*Id.*). Dr. Durr also noted that her verbal comprehension Index score went from 66 (March 2011 testing) to a 58. Dr. Durr opined that "[t]his is a highly unlikely change." (*Id.*).

Dr. Durr administered the Wechsler Adult Intelligence Scale-Fourth Edition (WAIS-IV) and Trail Making Test. According to Dr. Durr, Plaintiff understood the purpose of the testing and her results were lower than would be expected based on educational and vocational history and lower than previous testing "which was considered invalid that that time." (AR 921). In sum, Dr. Durr opined that Plaintiff's AXIS I diagnosis was mood disorder NOS, R/O Bipolar I disorder, "history of manic or hypomanic episodes are not clear from history." (*Id.*). Dr. Durr stated that "due to numerous inconsistencies in her reporting and medical records along with less than optimal effort, an accurate medical source statement is unable to be provided." (AR 922). Dr. Durr did recommend consistent mental health treatment. (*Id.*).

The ALJ gave Dr. Durr's opinion great weight. (AR 29). Specifically, despite Dr. Durr's inability to provide a medical source statement, she did report that Plaintiff indicated to her that she had been exercising daily, going on walks, felt her mood was stable, denied a depressed mood and denied suicidal ideation or auditory/visual hallucinations. (AR 30). The ALJ opined that because Dr. Durr's report was "well supported by explanation and the medical evidence" he felt justified in according her opinion great weight. (AR 30).

Dr. Richard Anderson, Ph.D. a Board Certified Psychologist and a Medical Expert was the testifying expert at Plaintiff's hearing. Dr. Anderson testified that when Plaintiff was hospitalized in October 2013 she displayed

unusual symptoms. (AR 47). He noted that the medical record from that hospitalization diagnosed her with psychotic disorder not otherwise specified. He also testified that he would consider that disorder to be severe impairment. (*Id.*). Dr. Anderson also opined that "there have been several references to a bipolar diagnosis, which is not supported by the record." (AR 48). Dr. Anderson supported his opinion by stating he found "no evidence of any manic episode in the record." (*Id.*). In addition, he noted that "[a]ll the mania reports are self-reported." (*Id.*).

Dr. Anderson also testified regarding Plaintiff's work limitations. He stated that he agreed with the medical source statement prepared by Dr. Kaiser indicating "mild limitations with simple tasks, with interacting with others in general, moderate limitations in work with detailed tasks and with persistence in pace." (AR 49). Dr. Anderson testified that the record presented to him for review did not cite to any other workplace limitations. (*Id.*). Dr. Anderson confirmed his opinion on cross-examination by Plaintiff's attorney:

> **Attorney: Doctor, so is it your testimony that she does not suffer from a bipolar disorder?**
> **Dr. Anderson: That is correct. It's not established in the record at all. (AR 50).**

The ALJ opined that based upon Dr. Anderson's review of the medical record, his opportunity to hear Plaintiff's testimony, and his qualifications as a medical expert, his opinion was given significant weight. (AR 31).

In sum, the ALJ found Dr. Kaiser's opinion was contradicted by several examining physicians' opinions which were supported by independent tests and separate clinical findings. In this situation, the ALJ may resolve the conflict by relying on the examining physician's opinion. *Andrews v.*

*Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) ("Where the opinion of the claimant's treating physician is contradicted and the opinion of a non-treating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the non-treating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict.*"); see also Allen v. Heckler*, 749 F2d 577,579 (9th Cir. 1985) (finding that to the extent the opinion of an examining physician rests on objective clinical tests, the opinion may constitute substantial evidence for rejecting a treating physician's opinion.).

Rather than address the findings of these physicians' reports, Plaintiff cites to *Lester v. Chater,* 81 F.3d 821 (9th Cir. 1995). Specifically, Plaintiff claims that "the ALJ did not articulate legally sufficient reasons for rejecting Dr. Kaiser's opinion that Arreola would have a moderate impairment in the ability to maintain attendance, work at a consistent pace, sustain an ordinary routine, and respond to changes in a work setting." (ECF No. 12-1, p. 9) citing *Lester*, 81 F3d at 830-31, 832.

Plaintiff's citation to *Lester v. Chater* fails to support her argument that the ALJ did not provide specific and legitimate reasons for not fully adopting all of Dr. Kaiser's opinion. In *Lester,* the ALJ's decision was overruled because both treating *and* examining source opinions were rejected in favor of the non-treating/non-examining medical advisor's opinion without articulating either clear and convincing or specific and legitimate reasons for rejecting the opinions. *Id.* at 830-833. This is not the case here. Dr. Kaiser's opinion was not completely disregarded. As noted herein, his opinion was credited on the assessed limitations reported in the Medical Source

Statement. (AR 787-793). The AJL gave some weight to that opinion.[3] The ALJ also credited Dr. Kaiser's opinion based upon his "longitudinal history" with Plaintiff.

Conversely, the ALJ cited to additional findings present in the record that conflict with Dr. Kaiser's assertion that Plaintiff is unable to work. For example, Plaintiff reported to Dr. Kaiser on several occasions to feeling better with medication. Additionally, in spite of his belief that Plaintiff is prone to mood episodes and will be dealing with them the rest of her life, Dr. Kaiser opined her depression will likely improve. (AR 793). Additional record evidence also shows that Plaintiff regularly reported a better mood. (AR 796, 814, 845, 849 853). Dr. Kaiser reported that Plaintiff was doing well and not experiencing manic episodes. (AR 788, 733, and 796). Further, Plaintiff regularly stated that she performed a daily variety of tasks including housework and going for walks. (AR 59, 69, 70). It is undisputed that "'where the evidence is susceptible to more than one rational interpretation,' we must uphold the Commissioner's decision." *Sangathe v. Chater*, 108 F3d 978, 980 (9th Cir. 1997). These are specific and legitimate reasons based on the record for the ALJ not to fully credit Dr. Kaiser's opinion.

Here, the ALJ relied on laboratory test results, contrary reports from examining physicians, and cited specific and legitimate reasons for not fully crediting Dr. Kaiser's opinion. *See Magallanes v. Bowen,* 881 F.2d 747, 751–52 (9th Cir.1989). This demonstrates the ALJ properly considered and accorded some weight to Dr. Kaiser's opinion. The ALJ's decision is supported

---

[3] According to the record transcript, the ALJ sought Dr. Anderson's opinion on Plaintiff's mental limitations. (AR 49). In response, Dr. Anderson testified "I agree with the medical source statement …in the record." (*Id.*). The medical source statement that Dr. Anderson referred to was Dr. Kaiser's and was part of the medical record evidence. (AR 787-793).

by substantial evidence.

## III. CONCLUSION

For the foregoing reasons, this Court RECOMMENDS that Plaintiff's motion for summary judgment be DENIED, that the Defendant's cross-motion for summary judgment be GRANTED, and that Judgment be entered upholding the decision of the Defendant.

Any party having objections to the Court's proposed findings and recommendations shall serve and file specific written objections on or before **January 8, 2019**. *See* Fed. R. Civ. P. 72(b)(2). The objections should be captioned "Objections to Report and Recommendation." A party may respond to the other party's objections before **January 22, 2019**. See Fed. R. Civ. P. 72(b)(2).

Dated: December 20, 2018

Hon. Mitchell D. Dembin
United States Magistrate Judge